**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WESTERN WORLD INSURANCE** | * | |
| **COMPANY, a corporation.** | * | |
| | * | |
|     **Plaintiff** | * | |
| | * | |
| **vs.** | * | **Case No. CV-17-524** |
| | * | |
| **COMMUNITY CHURCH MINISTRIES, INC.,** | * | |
| **et al.** | * | |
| | * | |
|     **Defendants** | * | |

## MOTION TO DISMISS

COMES NOW Defendant Jasmyn Johnson, by and through her undersigned attorneys and moves the Court pursuant to Rules 12(b)(6) and 12(b)(1) of the Fed.R.Civ.P., and 28 U.S.C. §2201, to dismiss this action without prejudice.  As grounds for this motion, Defendant Johnson states as follows:

### I. BRIEF FACTUAL BACKGROUND

1.  Plaintiff Western World Insurance Company ("Western World"), is a New Hampshire Insurance Corporation doing business by agent in Mobile County, Alabama.  Western brought this diversity action under the Federal Declaratory Judgement Act, 28 U.S.C. §2201, et seq., seeking a declaration of the rights and status of the parties under the terms and conditions of a commercial and professional liability insurance policy issued on March 26, 2017, to Community Church Ministries, Inc. and Community Church Preschool Academy, Inc.

2.  Defendant Jasmyn Johnson is an adult resident citizen of Mobile County, Alabama and is the Plaintiff in the state-court action that was filed against Community Church Ministries, Inc. *et al.* in Mobile County, Alabama.

3.      Defendants Community Church Ministries, Inc. and Community Church Preschool Academy, Inc. are Alabama corporations created and existing under Alabama law. Both corporations are located within Mobile County, Alabama.  Community Church Ministries runs several daycare facilities in Mobile County, Alabama.  Defendant Johnson's son, "K.J.", was in the care of Community Church Ministries when he died.

4.      Defendants Angela M. Coker, Carl J. Coker, and Kenya Anderson are all adult resident citizens of Mobile County, Alabama.  The Coker Defendants own the Community Church corporations and Ms. Anderson was the daycare administration/director at the time of "K.J."'s death.

5.      On August 23, 2017, Defendant filed a state tort action against Community Church Ministries, Inc.; Community Church Ministries. Inc. and Preschool Academy; Community Nursery and Preschool Academy 2; Carl J. Coker; Angela M. Coker; and Kenya Anderson, as employee of Community Church Ministries, Inc. for negligence and wantonness related to the death of "K.J."  Defendants, collectively, filed an answer to said complaint through an attorney, that was furnished by Western World.

6.      On November 30, 2017, Defendant filed an amended complaint adding numerous new allegations, including a count for the state-law tort of outrage.

7.      On December 4, 2017, Defendants Community Church Ministries, Inc.; Community Church Ministries. Inc. and Preschool Academy; Community Nursery and Preschool Academy 2; Carl J. Coker; Angela M. Coker; and Kenya Anderson, as employee of Community Church Ministries, Inc. filed a Motion for Leave to File a Third-Party Complaint against Western World regarding coverage issues stemming from the aforementioned policy.

8.     On December 8, 2017, the Circuit Court of Mobile County granted Third-Party Plaintiffs' Motion for Leave to file a Third-Party Complaint against Western World in the underlying state court action.  Third-Party Plaintiffs filed their Complaint against Western World on December 12, 2017.

## II. 12(b)(6) ARGUMENT

9.     "Although [the District Court] must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions")." *Id.*  "In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in plaintiff's favor, 'but we are not required to draw plaintiff's inference.'" *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir.2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; see also *Iqbal*,129 S.Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true"). A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *Iqbal*, 129 S.Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570, 127 S.Ct. 1955, 1968-69, 1974, 167 L.Ed.2d 929 (2007).  In *Twombly*, the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965.

10.     Plaintiff's Complaint for this matter is little more than a recitation of insurance policy excerpts that it claims prove that there is no coverage for allegations contained in the underlying state court complaint.  Plaintiff fails to provide *any* factual allegations that would

support its request for a declaration that there is no coverage for the allegations contained in the underlying state court complaint.

11.     Plaintiff's Complaint contains sixteen numbered paragraphs and not a single paragraph states why the subject insurance policy does not apply to the facts set forth in the state court action. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "[D]etailed factual allegations" are not required, *Twombly,* 550 U.S., at 555, 127 S.Ct. 1955, <u>but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face,"</u> *Id.,* at 570.  Plaintiff has made no such factual allegations in its Complaint for this matter; as such, the Complaint should be dismissed for failure to state a claim for which relief may be granted.

### III. THE COURT SHOULD EXERCISE ITS DISCRETION UNDER THE DECLARATORY JUDGMENT ACT TO DISMISS THIS ACTION.

12.     Under *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995), and *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494 (1942), the District Court is empowered with broad discretion in determining whether to dismiss this declaratory judgment action in favor of the parallel state court action. The issues presented in the instant case are better settled by an Alabama state court because adjudication in a deferral court will subvert the goals of diversity jurisdiction and promote forum shopping. In addition, parallel proceedings will risk unnecessary commitment of scarce judicial resources, multiplicative legal expenditures, and inconsistent adjudications.

13.     In *Brillhart*, the United States Supreme Court reinstated the decision of the district court dismissing a declaratory judgment action brought pursuant to 28 U.S.C. § 2201, holding that, "[a]lthough the District had jurisdiction of the suit under the Federal Declaratory Judgment Act,… it was under no compulsion to exercise that jurisdiction." *Id.* Noting the existence of a separate

action in state court "in which all of the matters in controversy could be fully adjudicated." The Court further observed that **"[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties**." 316 U.S. at 495.

14.     In *Wilton*, the United States Supreme Court had occasion to revisit the *Brillhart* decision, and reiterated that "[s]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* The Court noted that the district courts have "substantial latitude in deciding whether to stay or to dismiss a declaratory judgment suit in light of pending state proceedings" and that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." 515 U.S. at 286-88.

15.     Following the guidance of *Brillhart* and *Wilton*, the various federal district courts of Alabama have routinely invoked their discretion under the Declaratory Judgment Act to dismiss declaratory actions under circumstances where a state proceeding involves the same or some of the same parties and raises similar or parallel legal or factual issues. See, e.g., *Mutual Life Ins, Co. of New York v. Adams*, 972 F. Supp. 1386-1397 (N.D. Ala. 1997) (declining to exercise jurisdiction over declaratory action where, *inter alia*, several pending state court proceedings brought by individual policyholders raised similar issues): *MacMillian-Bloedel. Inc. v. Fireman's Ins. O. of Newark, J.J.,* 558 F. Supp. 596, 599-600 (S.D. Ala 1983) (dismissing declaratory action brought by injured party against liability carrier of alleged tortfeasor where underlying state action was still pending and where Alabama direct action statue afforded injured party separate remedy against

liability carrier under state law if injured party prevailed in pending state court action); *American General Finance Center v. Baldwin*, 907 F. Supp. 361, 362-363 (M.D. Ala. 1995) (dismissing declaratory action under *Brillhart* standard where pending state court action could fully resolve issues between the  parties); *Universal Underwriters Service Corp. v. Melson*, 953 F. Supp 385, 386-387 (M.D. Ala. 1996((same); *United States Fidelity and Guaranty Company v. Algernon-Blair, Inc.,* 705 F. Supp. 1507, 1514-1521 (M.D. ala 1988)(same).

16.     The Eleventh Circuit clarified the declaratory judgement waters when it issued the *Ameritas Variable Life Ins. Co. v. Roach* opinion in 2005. 411 F.3d 1328 (2005).  The *Ameritas* Court set out nine factors to consider when deciding whether or not the District Courts should abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts.  Those nine factors are as follows:

   I.   The strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

  II.   Whether the judgment in the federal declaratory action would settle the controversy;

 III.   Whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

  IV.   Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" – that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;

   V.   Whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

  VI.   Whether there is an alternative remedy that is better or more effective;

 VII.   Whether the underlying factual issues are important to an informed resolution of the case;

VIII.   Whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

IX.     Whether there is a close nexus between the underlying factual and legal issues
        and state law and/or public policy, or whether federal common or statutory law
        dictates a resolution of the declaratory judgement action.

*Id.* at 1331.

17.     In *Progressive Specialty Ins. Co. v. Bailey et al.,* a case that is directly on-point

with the subject case, Judge Steele of the Southern District of Alabama, applied the nine *Ameritas*

factors. CIV 06-0289-WS-C (S.D. Ala., July 25, 2006).  In the *Bailey* case, Doris Bailey filed suit

in state court against several in-state defendants for negligence and wantonness stemming from an

accident in which she was injured.  Two of the defendants filed an answer to the state-court

complaint through an attorney that was furnished by their insurer, Progressive.  Progressive then

filed a complaint in District Court seeking a declaratory judgement regarding coverage issues.

After the filing of the federal action, one of the state-court defendants filed a third-party complaint

against Progressive in state court seeking a declaratory judgement regarding coverage issues.

18.     Judge Steele, citing *Wilton* and *Ameritas* stated as follows:

"[I]t is well-settled that the Declaratory Judgement Act is properly 'understood to
confer on federal courts unique and substantial discretion in deciding whether to
declare the rights of litigants.' *Wilton v. Seven Falls Co.* 515 U.S. 277 (1995).
Indeed, the Supreme Court has 'repeatedly characterized the Declaratory
Judgement Act as an enabling Act, which confers a discretion on the courts rather
than an absolute right upon the litigant.'  As the Eleventh Circuit recently observed,
the Act 'only gives the federal courts competence to make a declaration of rights;
it does not impose a duty to do so.'  *Ameritas Variable Life Ins. Co. v. Roach*, 411
F.3d 1328, 1330 (11th Cir. 2005). **The desire of insurance companies … to
receive declarations in federal court on matters of purely state law has no
special call on the federal forum.**  Consistent with the foregoing, it has long been
recognized in this Circuit that a district court has the discretion to 'decline to
entertain a declaratory judgement action on the merits when a pending proceeding
in another court will fully resolve the controversy between the parties.'" *Id.* at p. 2
(emphasis added).

19.     Judge Steele went on to apply the *Ameritas* factors to the *Bailey* case.  The first

factor, "the strength of the state's interest in having the issues raised in the federal declaratory

action decided in state courts" was found to heavily favor a dismissal of the federal action.

"Alabama state courts undoubtedly have substantial interest in …the proper interpretation of an insurance policy issued to an Alabama business for its activities in Alabama, and whether that policy extended coverage to an Alabama citizen for his alleged wrongs to another Alabama citizen during an incident that occurred in Alabama.  Alabama law will supply the rule of decision with respect to these questions.  Under these circumstances, the State of Alabama has a considerable interest in deciding these coverage issues." *Id.* at p. 3.

20.     We have an identical fact scenario in the present case.  Specifically, we have an insurance policy issued to an Alabama business (Community Church Ministries) for its activities in Alabama and the question is whether that policy extended coverage to the Alabama business and its Alabama-resident officers and employees (the Cokers and Anderson) for alleged wrongs to other Alabama citizens ("K.J." and Jasmyn Johnson) during an incident that occurred in Alabama.  As Judge Steele wisely concluded under the exact same fact scenario, the State of Alabama has a considerable interest in deciding these issues.

21.     The second factor, "whether the judgement in the federal declaratory action would settle the controversy," was also found "unequivocally" to be in favor of dismissal by Judge Steele.  "After this Court adjudicated the coverage issues animating this declaratory judgement action, and irrespective of the manner in which those issues were decided, the Choctaw County Circuit Court would be left to implement that ruling and address the merits of [Plaintiff's] claims against [Defendant].  By contrast, both the coverage… and liability issues are pending before the state court in the same proceeding.  Allowing the Choctaw County Circuit Court to address all of those issues would avoid the fragmented, piecemeal litigation that Progressive seeks to impose via its declaratory judgement action.  Clearly this factor favors abstention. *Id.*

22.     Again, we have the exact same scenario in the subject case.  If the District Court were to adjudicate the coverage issues, the Mobile County Circuit Court would be left to implement that ruling and address the merits of Johnson's claims against Community Ministries, et al.  As was the case in *Bailey*, both the coverage and liability issues are currently pending before the Mobile County Circuit Court in the same proceeding.  Allowing the Mobile County Circuit Court to address all of those issues would avoid the fragmented, piecemeal litigation that Western World seeks to impose via its declaratory judgement action.  This factor favors abstention.

23.     The third factor, "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue," was found to be "**weakly**" in favor of exercising jurisdiction.  Judge Steele pointed out that the state court was in an equally advantageous position to clarify the parties' legal relations.  *Id*.  This is where the subject case differs a bit from the *Bailey* case.  In the subject case, there are claims for the tort of outrage (that were not present in *Bailey*) that will require significant fact-finding and subsequently, applying those facts to the issue of insurance coverage.  Given this issue, the state court, who will hear both fact and coverage related issues, is in a far superior position to determine coverage as it applies to the facts that will be uncovered throughout extensive discovery and the trial of this matter.

24.     The fourth factor is "whether the declaratory remedy is being used merely for the purpose of `procedural fencing' — that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable." *Id.*  Judge Steele, after noting that a pending state-court action was already set to address the coverage issue raised by the insurance company in the federal court action, stated: "to endorse this kind of two-step dance would be to collapse the multi-faceted *Ameritas* test into a single-factor benchmark of who reaches the courthouse first.  By filing a federal declaratory action before the aggrieved plaintiff seeks

declaratory relief in state court, an insurer could guarantee a federal forum by summoning § 6-5-440 to smite down the state declaratory claims, leaving only the federal action. This approach does violence to the principles enunciated in *Ameritas,* as well as the rationale of the Supreme Court in *Brillhart* and *Wilton.* For these reasons, the 'procedural fencing' factor favors declination of federal jurisdiction here."

25.     Western World could have easily filed its declaratory judgement action in the pending state court action under Ala. Code §6-6-223, which is Alabama's declaratory judgement statute.  Instead, Western chose to file a new and separate action in federal court seeking federal intervention in the state action.  This is the exact "two-step dance" that Judge Steele referenced in *Bailey* and one that should not be entertained in the subject case, as it is a clear example of procedural fencing/forum shopping.  "The desire of insurance companies … to receive declarations in federal court on matters of purely state law has no special call on the federal forum."  *Id.* at 3. This factor favors declination of federal jurisdiction.

26.     The fifth factor is, "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction." In *Bailey*, Judge Steele held unequivocally:

> "It would. Identical claims for declaratory relief are now before the state court and this Court. If this Court asserted jurisdiction, that decision might effectively force the Choctaw County Circuit Court to dismiss Powell's third-party complaint under § 6-5-440 and hold the *Bailey* Action in suspended animation while awaiting a ruling from this Court as to whether Progressive must furnish a defense to Powell. Needless to say, wresting legal issues away from the state court, obliging it to stand idly by until this Court rules on those issues, and then expecting it to implement this Court's rulings (whether it agrees with them or not) is a recipe for undue encroachment and heightened friction. The result would be equally unfavorable if this Court asserted jurisdiction and the *Bailey* court permitted Powell's third-party complaint to proceed. In that event, a veritable footrace would ensue between federal and state courts to resolve the issues first, with the faster court's disposition becoming binding on the slower court's through the alchemy of *res*

*judicata.* Nothing good can come from such an arrangement, so this guidepost also points unwaveringly in the direction of abstention.

27.     Western World is seeking the same relief from this Court as did Progressive in the *Bailey* case.  For the extensive reasons set out by Judge Steele in *Bailey,* this Court should also decline to create a "veritable footrace … between federal and state courts to resolve the issues first."  This guidepost "points unwaveringly in the direction of abstention."

28.     The sixth factor is, "whether there is an alternative remedy that is better or more effective."  In *Bailey*, Judge Steele noted: "litigating the coverage issue in the *Bailey* [state court] Action exclusively is a vastly superior remedy to conducting double-tracked litigation in two courts. Unquestionably, Progressive can fully litigate its claims for declaratory judgment against Powell and Bailey in the existing Choctaw County Circuit Court proceedings, with both coverage and liability issues to be decided by the same court in an integrated manner without federal interference. This alternative is clearly better and more effective."  The same is even more true in the subject case.  As pointed out *supra*, this case involves an outrage claim that will require extensive liability discovery.  These liability and coverage issues should be decided in the state court in an integrated manner without federal interference.  This factor favors declination of federal jurisdiction.

29.     The seventh factor is, "whether the underlying factual issues are important to an informed resolution of the case."  This claim involves the negligence, wantonness and outrageous conduct that resulted in the death of a child and the severe emotional distress of Ms. Johnson. There must be discovery to determine, at a minimum: how the child died, when he died and where he died, in addition to all facts surrounding Ms. Johnson's individual claims, which include, *inter alia*, a pattern and practice of failure to provide an adequate number of employees; a pattern and practice of failure to maintain transportation logs; a pattern and practice of failure to correctly

document the number of children in Defendants' care; failure to provide the proper safety equipment necessary for children; a pattern and practice of failure to draft or implement proper safety policies and procedures, etc.  These are fact and discovery issues that must be addressed before any court can properly rule on a declaratory judgement motion. Parties in the pending state court action have already begun this discovery, exchanging extensive written discovery with production of documents, videos, electronic data and scheduling of party depositions. This factor favors declination of federal jurisdiction.

30.    The eighth factor is, "whether the state trial court is in a better position to evaluate those factual issues than is the federal court."  As pointed our immediately *supra*, the parties have already begun extensive discovery in the pending state court action.  The search for facts necessary to determine insurance coverage began three months ago in the Mobile County Circuit Court and has proceeded therein up until the date of the filing of this motion.  Ms. Johnson's claims for negligence, wantonness, and outrage, in the state court complaint cannot be evaluated without an in-depth study of the facts and determinations of what happened on the date of, and prior to, K.J.'s death.  As pointed out by Judge Steele in *Bailey*: "The [] Circuit Court will already be examining those events in connection with [Plaintiff's] claims against [Defendants], so that court would not need to review them anew to resolve [] insurance coverage issues. Rather than having two courts duplicate effort in scrutinizing and assessing the underlying facts, a far more sensible and efficient approach is for the state court that is already tasked with examining those facts in the underlying case to apply those same facts to the pending claims for declaratory relief."  *Bailey* at p.4.  This factor favors declination of federal jurisdiction.

31.    Ninth and finally, *Ameritas* directs district courts to consider "whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or

whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Id* at 1331. "This factor unambiguously weighs in favor of abstention when an [insurance company's] Complaint raises exclusively state law issues and implicates exclusively state law public policies, with no reference whatsoever to federal common or statutory law." *Bailey* at p. 4. In the subject action, Western World's complaint does not raise any issues regarding federal common or statutory law and only involves state law issues and state public policy.  As such, "this factor unambiguously weighs in favor of abstention."

## IV. CONCLUSION

32.      There can be no doubt that this declaratory judgement action turns on Alabama state law issues relating to whether Western World's insurance policy provides coverage to the Community Church Ministries Defendants in connection with certain state-law claims brought in an Alabama state court; concerning events that occurred in Alabama; between Alabama residents and Alabama corporations. All of the legal and factual issues raised by Western World in this action against Defendants are also at issue in the currently pending Mobile County action.  *Bailey* at p. 5 (citing *Sherwin-Williams Co. v. Holmes County,* 343 F.3d 383, 390-91 (5th Cir. 2003) ("if the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit"); *ITT Industries, Inc. v. Pacific Employers Ins. Co.,* 427 F. Supp.2d 552, 561 (E.D. Pa. 2006) (describing wasteful, inefficient outcome if both federal court and state court ruled on parallel actions, with duplication, piecemeal resolution of issues, and encroachment on other proceedings)).

33.      Further, this action cannot completely and finally resolve this dispute. It will leave various issues for resolution in the Mobile County action irrespective of the outcome of the

declaratory issues in federal court. "That kind of piecemeal litigation, and the ensuing friction, gratuitous interference, and unease between state and federal courts confronted with precisely the same issues presented by the same litigants, counsels against exercising jurisdiction here." *Bailey* at p. 5. citing *Ameritas,* 411 F.3d at 1332 (finding that allowing declaratory judgment action to proceed would amount to gratuitous interference with more encompassing, currently pending state court action).

34.    Lastly, because the same issues are pending in the state court action between the same parties, this Court's exercise of federal jurisdiction in this action would risk unnecessary commitment of scarce judicial resources, multiplicative expenditures on legal services, inconsistent rulings at numerous litigation junctures and the appearance of disregard for the state court's authority and expertise.

WHEREFORE PREMISES CONSIDERED, Defendant, Jasmyn Johnson, individually and on behalf of K.J., a deceased minor, through her undersigned attorney, moves this Court pursuant to Rule 12(b)(1) and 12(b)(6), Fed.R.Civ.P., and 28 U.S.C. §2201, to dismiss this action without prejudice or, in the alternative, to stay this action pending resolution of the state court action described above.

Respectfully submitted,

*/s/ Kasie M. Braswell*
KASIE M. BRASWELL
E-mail:  kasie@braswellmurphy.com
*/s/ D. Brian Murphy*
D. BRIAN MURPHY
E-Mail:  brian@braswellmurphy.com
**ATTORNEYS FOR PLAINTIFFS**

**BRASWELL MURPHY, LLC**
105 N. Conception Street, Suite 100
Mobile, Alabama 36602

Telephone: (251) 438-7503
Fax: (251) 438-7949

**Gregory L. S. Harris II**
E-Mail: GLSHarris@JacksonHarrislaw.com
**Gregory L. Harris  J.**
E-Mail: Greg@JacksonHarrislaw.com
**Malcolm Jackson III**
E-Mail: JMalcolm@JacksonHarrislaw.com

**JACKSON HARRIS, P.C.**
912 Dauphin Street
Mobile, Alabama 36604
Telephone: (251) 441-0053
Fax: (251) 441-0076
**ATTORNEYS FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on December 22, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/  Kasie M. Braswell*
Of Counsel